UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Café Indigo, LLC

      v.

Pearl River Pastry, LLC
d/b/a Abe's Muffins

Civil No. 20-cv-419-JL
Opinion No. 2020 DNH 148

**<u>MEMORANDUM ORDER</u>**

The plaintiff's request for preliminary injunctive relief in this breach-of-contract

action turns on whether a license agreement between the parties mandates arbitration of

its audit provision, the scope of that provision, and whether the plaintiff has demonstrated

that it will be irreparably harmed if that provision is not enforced.  Pursuant to a series of

license agreements, culminating in the 2017 License Agreement that is the subject of this

action, defendant Café Indigo, LLC licensed recipes and processes for making certain

vegan and gluten-free products to Pearl River Pastry, LLC, in exchange for a royalty.

Early this year, Pearl River decided not to renew that Agreement.  Café Indigo then

brought this action, it claims, after discovering that Pearl River had begun selling its own

line of vegan and gluten-free products under the brand Abe's Muffins.  In its complaint,

Café Indigo asserted four claims ostensibly sounding in equity so as to bypass the

Agreement's arbitration provision:  a claim for "equitable discovery" (Count 1) and

separate claims for breach of contract seeking only specific performance for alleged

breaches of the "audit provision" (Count 2), the "joint materials provision" (Count 3), and the "trade secrets return provision" (Count 4).[1]

Café Indigo originally sought a preliminary injunction ordering relief on all of its allegedly equitable claims.[2]  Pearl River moved to dismiss all of Café Indigo's claims asserting, among other grounds, that the Agreement mandated arbitration.[3]  After a videoconference hearing, negotiation, and an agreed-to period of limited discovery, the parties are now engaged in arbitration.[4]  Café Indigo now seeks to stay or dismiss without prejudice Counts 1, 3, and 4, and seeks an injunction ordering Pearl River to comply with the audit provision.[5]

The court has subject-matter jurisdiction under 28 U.S.C. § 1332(a) (diversity). Pearl River contends that the court lacks jurisdiction to resolve this claim because of the Agreement's arbitration provision.  The court disagrees.  To the contrary, the Agreement carves Café Indigo's request for a preliminary injunction in the form of specific performance of the audit provision out of the arbitration clause.  But, though the court may hear the request, it may not grant it without finding that Café Indigo has satisfied the

---

[1] In its original complaint, Café Indigo captioned these claims as claims for "Specific Performance of" each provision.  Compl. (doc. no. 1-1) at 15–16.  In amending its complaint, it clarified that the claims were actually for breach of contract.  Am. Compl. (doc. no. 30) at 15–17. Café Indigo has not brought a trade secret misappropriation claim in this court.

[2] Mot. for Prelim. Inj. (doc. no. 3); Mot. for Expedited Relief (doc. no. 4).

[3] See Mot. to Dismiss (doc. no. 18).

[4] See Plaintiff's Mot. to Stay or Dismiss (doc. no. 41); Agreed-to Facts (doc. no. 47) ¶ 9.

[5] See Plaintiff's Mot. to Stay or Dismiss; Plaintiff's Supp. Mem. Regarding Audit Provision (doc. no. 42).

four elements necessary to obtain a preliminary injunction.  And because Café Indigo has failed to demonstrate that it will be irreparably harmed if the audit clause is not enforced, the court denies Café Indigo's preliminary injunction request.  The court then dismisses Café Indigo's claims in light of the parties' submission to arbitration.

## I.   <u>Applicable legal standard</u>

Café Indigo seeks a preliminary injunction.  "District courts have the authority to issue injunctive relief even where resolution of the case on the merits is bound for arbitration," as it is here.  Braintree Labs., Inc. v. Citigroup Glob. Markets Inc., 622 F.3d 36, 40 (1st Cir. 2010).  Café Indigo's entitlement to the relief it seeks turns on the familiar four factors:  "(i) the likelihood that the movant will succeed on the merits; (ii) the possibility that, without an injunction, the movant will suffer irreparable harm; (iii) the balance of relevant hardships as between the parties; and (iv) the effect of the court's ruling on the public interest."  Waldron v. George Weston Bakeries, Inc., 570 F.3d 5, 9 (1st Cir. 2009).

Here, Café Indigo "does not seek a traditional, prohibitory preliminary injunction, but instead asks for a mandatory preliminary injunction, which requires affirmative action by the non-moving party in advance of trial."  Braintree Labs., 622 F.3d at 40–41.  Because a mandatory injunction "alters rather than preserves the status quo, it 'normally should be granted only in those circumstances when the exigencies of the situation demand such relief.'"  Id. at 41 (quoting Mass. Coal. of Citizens with Disabilities v. Civil Def. Agency, 649 F.2d 71, 76 n.7 (1st Cir. 1981)).  Still, the court measures those

exigencies "according to the same four-factor test," id., because "[t]he focus always must be on prevention of injury by a proper order, not merely on preservation of the status quo."  Crowley v. Local No. 82, 679 F.2d 978, 996 (1st Cir.1982), rev'd on other grounds by 467 U.S. 526 (1984).

## II.    Background

In 2011, Café Indigo licensed its recipes, processes, and techniques for making certain vegan baked goods to Pearl River, a commercial bakery, in exchange for a royalty on Pearl River's sales of those products.[6]  The parties renewed that agreement multiple times, most recently in 2017.  The parties agree that the Agreement is valid and binding on both parties.[7]  Absent extension, the Agreement was set to expire on February 28, 2020.[8]

In January 2020, Pearl River informed Café Indigo that it would not again renew the parties' license agreement.[9]  It had, by that time, been selling its own line of vegan and gluten-free baked goods under the name Abe's Muffins for some years.[10]  Over the next several weeks, on February 4 and February 14, Café Indigo demanded, among other things, that Pearl River (1) permit Café Indigo to audit its records consistent with ¶ 8.4 of

---

[6] See Koffman Decl. (doc. no. 14-1) ¶¶ 20, 22.

[7] Id. ¶ 24.

[8] 2017 License Agreement, Joint Submission of Agreed-to and Disputed Facts Ex. A (doc. no. 47-1) § 10.1.

[9] Koffman Decl. ¶ 30.

[10] Id. ¶ 51.

the Agreement, (2) return or certify destruction of any Café Indigo trade secrets, and (3) confirm that it would not use any materials defined as "Joint Materials" under the Agreement after it expired.

Café Indigo filed this action in the Merrimack Superior Court on February 24, 2020.  In its original complaint, Café Indigo brought three breach-of-contract claims styled a claims for "equitable relief" in the form of specific performance of the contract, as well as a claim for "equitable discovery."[11]  It moved the same day for a mandatory preliminary injunction, requesting at a preliminary stage all of the equitable relief sought through its complaint.  Pearl River removed the action to this court, citing its diversity jurisdiction, see 28 U.S.C. § 1332(a), on April 7,[12] at which point Café Indigo renewed its preliminary injunction motion.[13]  Pearl River both objected and moved to dismiss, citing the arbitration provisions of the 2017 Agreement.

After the court held a hearing on the motion to dismiss via videoconference on April 20, the parties agreed to conduct limited discovery before the court resolved the preliminary injunction motion.[14]  The parties conducted that discovery and initiated arbitration proceedings, then asked the court to hear the preliminary injunction motion. The court provided an opportunity for the parties to submit agreed-to and disputed

---

[11] Compl. at 12–16.

[12] See Notice of Removal (doc. no. 1).

[13] See Mot. for Preliminary Injunction ¶ 6.

[14] See Joint Stipulation Regarding Discovery (doc. no. 31).

statements of fact as well as documentary and testimonial evidence,[15] but the parties informed the court that they did not require an evidentiary hearing because they considered the issue one of pure contract interpretation.[16]

At the hearing, Café Indigo's counsel requested an opportunity to submit additional briefing and evidence concerning Pearl River's vegan carrot cake recipe and process, which it argued would support the irreparable harm element.  But the court had already provided the parties with ample opportunity to support their arguments with evidence—an invitation the parties declined.  And Café Indigo failed to raise this issue before the hearing, despite its counsel representing that he had received the evidence in question several days before.  Because of this, and because—as explained below—it ultimately would not impact the court's irreparable harm analysis, the court declined to accept late-submitted evidence or briefing.

## III.   <u>Analysis</u>

Café Indigo seeks a preliminary injunction, based on its second count, mandating Pearl River to comply with the audit provision.  And it seeks to audit Pearl River's records concerning not only the products Pearl River manufactured for Café Indigo, but also concerning products Café Indigo has identified as potentially using Café Indigo trade

---

[15] Procedural Order (doc. no. 46).

[16] <u>See</u> Order of July 24, 2020.  The parties did file a joint statement of facts, as the court required.  <u>See</u> Joint Submission of Agreed-to and Disputed Facts (doc. no. 47).

secrets.[17]  Pearl River objects, arguing that the breach-of-contract claim underlying Café Indigo's request for relief should be dismissed as subject to mandatory arbitration and, further, disputing the scope of the audit provision and Café Indigo's entitlement to its preliminary enforcement.[18]  As explained below, though the Agreement's carve-out for injunctive relief permits the court to hear the plaintiff's request for a preliminary injunction, it has not established that it would be irreparably harmed absent such relief, and so the court denies Café Indigo's motion.

Café Indigo also moves to stay or dismiss without prejudice three of its claims— those relating to equitable discovery (Count 1), the joint-materials provision (Count 3), and the trade-secret return provision (Count 4).[19]  And once its request for injunctive relief is addressed, it agrees that Count 2 should also be stayed or dismissed.  Pearl River agrees to dismissal of Counts 1, 3 and 4, but asks the court to dismiss those counts with prejudice.[20]  As explained infra Part III.C, the court agrees, and dismisses Café Indigo's breach-of-contract claims—Counts 3 and 4—with prejudice, in the sense that Café Indigo is not entitled court resolution of those claims on their merits, but may yet challenge the result of their arbitration.  Having denied Café Indigo's motion for a preliminary injunction on Count 2, and with the merits of that claim also subject to arbitration, the

---

[17] Plaintiff's Supp. Mem. at 4–5.  Café Indigo has identified these products in its proposed order on this motion.  See Proposed Order (doc. no. 48) ¶ 2 & n.2.

[18] Defendant's Supp. Mem. Regarding Audit Provision (doc. no. 44) at 6–7.

[19] Plaintiff's Mot. to Stay or Dismiss.

[20] Defendant's Obj. to Mot. to Stay or Dismiss (doc. no. 43).

court also dismisses that claim.  Finally, the court dismisses Count 1 with prejudice in the traditional sense of that term.

### A.    Arbitration provision

Before it turns to the traditional four-factor test, the court rejects Pearl River's argument that Café Indigo's request for preliminary injunctive relief is not properly before the court because it is subject to the arbitration provision.[21]  As explained above, the court has "the authority to issue injunctive relief even where resolution of the case on the merits is bound for arbitration."  Braintree Labs., 622 F.3d at 40.  And the Agreement itself allows Café Indigo to pursue preliminary injunctive relief in this form.

The parties agreed to first negotiate and, if negotiation failed, to submit to binding arbitration "any dispute, claim or controversy arising out of or relating to [the] Agreement, any performance or dealings between the parties, or any dispute arising out of the interpretation or application of the Agreement . . . ."[22]  The parties agree, here, that Café Indigo's claim that Pearl River has failed to comply with the audit clause fits this definition and is thus subject to arbitration.[23]

But they also agreed that, "notwithstanding [those] dispute resolution procedures, [Café Indigo] may seek equitable relief in accordance with Article XII above" though

---

[21] See Defendant's Supp. Mem. at 3–4.

[22] 2017 License Agreement §§ 13.5.2, 13.5.3.

[23] At oral argument, Café Indigo acknowledged that this claim would be subject to arbitration but for, and after the resolution of, its request for injunctive relief.

they further agreed that "the parties will continue to participate in good faith in the procedures set forth in this Section 13.5."[24]  Article XII provides for injunctive relief in the event that Pearl River failed to comply with any term of the Agreement.  Specifically, it provides in its entirety:

> Licensee acknowledges and agrees that Licensor would suffer irreparable harm and that there would be no adequate remedy at law should Licensee fail to comply with any of the terms and conditions of this Agreement, including Licensee's disclosure or unauthorized use of the Trade Secrets, or Licensee's failure to cease the manufacture and sale of Licensed Products upon the expiration or termination of this Agreement.  Licensee further acknowledges and agrees that, in the event Licensee fails to comply with any term or condition of this Agreement, Licensor shall be entitled to equitable relief by way of temporary restraining order, temporary injunction and permanent injunction and such other and further relief as any court with jurisdiction may deem proper.  Such injunctive relief is in addition to any other legal or equitable remedies that may be available to Licensor.[25]

Pearl River is not incorrect that a preliminary injunction requiring it to comply with the Agreement's audit provision effectively affords Café Indigo the same relief it would obtain through success on its breach-of-contract claim with respect to that provision.  But Pearl River agreed, first, that Café Indigo may pursue temporary and permanent injunctive relief in court with respect to Agreement-related disputes and, second, that Café River would be entitled to such relief should Pearl River "fail to comply with any of the terms and conditions of [the] Agreement . . . ."[26]  If Pearl River had wanted to exclude

---

[24] 2017 License Agreement § 13.5.4.

[25] Id. Article XII.

[26] Id.

mandatory injunctive relief from that clause, it could have done so; but nothing in that provision precludes it.

The terms of the Agreement—including the arbitration provision and the injunctive-relief carveout of Article XII—thus permit Café Indigo to seek the relief requested with respect to its second count.  And Pearl River cites no law or provision of the Agreement to the contrary.

### B.    Preliminary injunction

Having found that it may address Café Indigo's request for preliminary injunctive relief, however, the court declines to order it.  To obtain such relief, Café Indigo has the burden of demonstrating:  "(i) the likelihood that [it] will succeed on the merits; (ii) the possibility that, without an injunction, [it] will suffer irreparable harm; (iii) the balance of relevant hardships as between the parties; and (iv) the effect of the court's ruling on the public interest." Waldron, 570 F.3d at 9.  Though Café Indigo is likely to succeed on the merits—albeit in limited fashion—it has not demonstrated that it will suffer irreparable harm.  The court accordingly denies Café Indigo's request for preliminary injunctive relief mandating an audit of Pearl River's records.

### 1.    Likelihood of success on the merits

The 2017 Agreement requires Pearl River to "keep accurate books of account and records covering all transactions" under the Agreement and to maintain those for three

years.[27]  It further grants Café Indigo "and its duly authorized representatives . . . the right

. . . to examine said books of account and records of all other accounts, documents,

materials and inventory in the possession or under the control of [Pearl River] with

respect to the subject matter of this Agreement . . . ."[28]

Through Count 2 of the Amended Complaint, Café Indigo claims that Pearl River

has breached the audit provision by failing to provide product-related information it

requested or opportunity to audit Pearl River's account books and other records.  It seeks

as a remedy an injunction for specific performance of that provision with respect to Pearl

River's documents and records concerning not only the products that Café Indigo

licensed to Pearl River,[29] but also Pearl River's own products that, Café Indigo claims,

incorporate Café Indigo trade secrets.[30]  Pearl River argues that Café Indigo is unlikely to

succeed on the merits of its claim for breach of the audit provision because Café Indigo

seeks information beyond that which the audit provision authorizes.[31]

The parties agree to this much:  Café Indigo is entitled, under the audit provision,

to audit Pearl River's "books of account and records of all other accounts, documents,

---

[27] 2017 License Agreement § 8.4.

[28] Id.

[29] Specifically, Café Indigo's Vegan Carrot Cake, Vegan Lemon Poppyseed Muffin, Vegan Chocolate Cake, and Vegan Chocolate Whoopee Pies.  See Proposed Order at 2 n.1.

[30] Specifically, Abe's Carrot Coconut Cake Muffin, Devil's Food Muffin, Dark Chocolate Pound Cake Muffin, Chocolate Square Cake, Lemon Poppy Muffin, Gluten-free Lemon Poppy Muffin, Ultimate Lemon Pound Cake, Chocolate Chip Muffin, Pumpkin Spice Muffin, and Gluten-free Double Chocolate Muffin.  See Proposed Order at 2 n.2.

[31] See Defendant's Supp. Mem. at 6–7.

materials and inventory in the possession or under the control of [Pearl River] with respect to" the specific products licensed under the 2017 Agreement—that is, the "Licensed Products" as the Agreement defines them.  They also agree that, "[o]n February 4, 2020, and multiple times thereafter, Café Indigo . . . requested information from Pearl River . . . pursuant to Section 8.4."[32]  Pearl River's counsel sent a letter to Café Indigo's counsel on March 26 stating that Pearl River "invited [Café] Indigo to arrange for any 'audit' it may be entitled to perform pursuant to the 2017 Agreement."[33]  But disagreeing with Café Indigo's interpretation of the scope of the audit provision— that is, about what materials Pearl River must provide to Café Indigo—Pearl River has provided no information pursuant to this section.[34]  Pearl River thus appears to be, and does not dispute that it is, in breach of § 8.4 with respect to the Licensed Products.  Café Indigo is, accordingly, likely to succeed on the merits of its claim that Pearl River has breached the audit provision in the strict sense that Pearl River concedes that it has not complied.

The parties do dispute, however, whether Café Indigo is entitled under this provision to audit Pearl River's books of accounts and records with respect to its own products that Café Indigo claims incorporate Café Indigo trade secrets.  And in doing so, they dispute the scope of the audit provision.

---

[32] Joint Submission ¶ 6.

[33] Id. ¶ 7.

[34] Id. ¶¶ 7–8.

"Where the terms of a contract are clear and unambiguous, the intent of the parties must be found within the four corners of the contract, giving a practical interpretation to the language employed and reading the contract as a whole."[35]  Ellington v. EMI Music, Inc., 21 N.E.3d 1000, 1003 (N.Y. 2014).  This is because "[t]he best evidence of what parties to a written agreement intend is what they say in their writing . . . ."  Id.  Here, the parties have provided no external evidence of the Agreement's meaning and both rely on its written terms.[36]

Café Indigo argues that the audit provision requires interpretation and advocates, based on the clause's first two sentences, for one that permits Café Indigo to investigate any Pearl River record relating to the gluten-free or vegan products that Café Indigo believes might infringe its trade secrets.  In its first sentence, the clause requires Pearl River to "keep accurate books of account and records covering all transactions" under the Agreement for three years.  It then authorizes Café Indigo "to examine said books of account and records of all other accounts, documents, materials and inventory in the

---

[35] The parties do not dispute the Agreement's provision that the "Agreement shall be governed by and construed in accordance with the internal laws of the State of New York applicable to agreements made and to be performed wholly within such State, and in accordance with the trademark laws of the United States, as applicable."  2017 License Agreement § 13.5.1.  The court accordingly invokes New York law here.

[36] Both parties submitted affidavits in connection with Café Indigo's preliminary injunction otion.  See Koffman Decl.; Dunn Decl. (doc. no. 19-4); Koffman Third Decl. (doc. no. 27-1). But neither party relies on those declarations in briefing their respective interpretations of this provision.  See Plaintiff's Supp. Mem. at 4–6; Defendant's Supp. Mem. at 6–7.

possession or under the control of Licensee with respect to the subject matter of this

Agreement . . . ."[37]

The reference to "said books of account" and the conjunctive "and," Café Indigo

argues, means that the second set of records discussed—those "of all other accounts,

documents, materials and inventory . . . with respect to the subject matter of this

Agreement"—refers to a broader scope of records that includes any accounts or records

relating to Pearl River's manufacture and sale of any product (even Pearl River's own)

that arguably uses Café Indigo's recipes and trade secrets—the "subject matter of this

Agreement."[38]  But "parties cannot create ambiguity from whole cloth where none exists,

because provisions are not ambiguous merely because the parties interpret them

differently."  Universal Am. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 37 N.E.3d

78, 80 (N.Y. 2015) (internal quotations omitted).  Here, the audit provision is not

ambiguous and requires no interpretation.  It requires Pearl River "keep accurate books of

account and records covering all transactions" under the Agreement.  This means

precisely what it says: that Pearl River must keep accurate books of account and records

covering Agreement-related transactions.  It also allows Café Indigo to examine those

books of account, as well as "records of all other accounts, documents, materials and

inventory" in Café River's possession "with respect to the subject matter of this

---

[37] 2017 License Agreement § 13.5.1.

[38] See Plaintiff's Supp. Mem. at 4–5.

Agreement . . . ."[39]  This does not create a new and separate category <u>products</u> about which Café Indigo may examine Pearl River's records; it merely expands on the <u>type</u> of records that Café Indigo may review with respect to the products made using the licensed recipes and processes—that is, the subject-matter of the Agreement.

The language and structure of the rest of the audit provision support the conclusion that it is limited to accounts and records relating to products licensed to Pearl River.  It provides for remedies in the event that "any underreporting or underpayment is found" when Café Indigo audits Pearl River's records.[40]  This suggests that the clause is designed to afford Café Indigo an opportunity to inspect Pearl River's records relating to those products to assure itself of the accuracy of Pearl River's accounting and payment of royalties.  Nothing in the plain language of the provision suggests that, as Café Indigo argues, it was intended to be a "mechanism for Café Indigo to protect its trade secrets through verification that Pearl River is not misappropriating them . . . ."[41]

The audit provision thus requires Pearl River to provide Café Indigo audit access to its account books concerning only the Licensed Products and its "records of all other accounts, documents, materials and inventory" relating to only the Licensed Products.  It does not require Pearl River to permit Café Indigo to go on a fishing expedition through records relating to its own product lines for evidence of trade-secret misappropriation.

---

[39] 2017 License Agreement § 13.5.1 (emphasis added).

[40] <u>Id.</u> at § 8.4.

[41] Plaintiff's Supp. Mem. at 4.

And even were the court to interpret the audit clause more broadly, Café Indigo has not submitted evidence from which the court could conclude that Pearl River products are made using Café Indigo's licensed recipes or processes such that records pertaining to Pearl River's products would constitute records "with respect to the subject matter of this Agreement." As explained supra, the court offered the parties an evidentiary hearing, which they jointly rejected. Nor did Café Indigo point in its memorandum to any evidence supporting this proposition, focusing solely on the language of the contract.[42] At oral argument, Café Indigo's counsel offered to introduce evidence, belatedly, that Pearl River's vegan carrot cake products may incorporate Café Indigo processes; but Café Indigo's counsel insisted that such evidence went only to support the irreparable harm element, not the likelihood that Café Indigo may succeed on the merits of its claim for breach of the audit provision.

Café Indigo is thus not entitled to the broad discovery that it seeks. But it is entitled to enforcement of the audit provision with respect to Pearl River's records related to the licensed products  Just because Café Indigo seeks information beyond what the audit provision authorizes does not relieve Pearl River of providing the information that it agrees the audit provision does authorize. Pearl River is required to allow Café Indigo access to its "books of account and records of all other accounts, documents, materials

---

[42] As explained supra n.36, to the extent that the parties have submitted evidence in support of or opposition to Café Indigo's preliminary injunction motion as a whole, they do not cite it in support of or opposition to Café Indigo's request for enforcement of the audit provision.

and inventory . . . with respect to the subject matter of this Agreement" going back three

years from termination of the agreement.[43]

### 2.    Irreparable harm

Having demonstrated a likelihood of success on the merits, Café Indigo must now

also show that it would be irreparably harmed absent enforcement of the audit provision

at this stage in the litigation.  This is "the essential prerequisite for equitable relief . . . ."

Steir v. Girl Scouts of the USA, 383 F.3d 7, 16 (1st Cir. 2004).  "Only a viable threat of

serious harm which cannot be undone authorizes exercise of a court's equitable power to

enjoin before the merits are fully determined.  A preliminary injunction will not be issued

simply to prevent a mere possibility of injury." Mass. Coal., 649 F.2d at 74.  And Café

Indigo has not identified any harm it would suffer, let alone irreparable harm, absent

enforcement of the audit provision.

Café Indigo suggests that, "[b]ecause the audit provision claim is one for

information and not damages, there is no available monetary remedy for breach."[44]  It

also argues, and emphasized at oral argument, its position that "[t]here is no guaranty that

[it] could obtain the same information through discovery in the Arbitration."[45]  In short,

as Café Indigo explained at oral argument, it effectively seeks an injunction requiring

Pearl River to produce discovery via an audit because Café Indigo is not certain, at this

---

[43] 2017 License Agreement § 8.4.

[44] Plaintiff's Supp. Mem. at 7.

[45] Id.

juncture, that it will obtain all the discovery it seeks through arbitration.  But Café Indigo has not explained how the lack of this information would cause it harm, let alone the sort of harm for which no monetary remedy is available.  In other words, as Pearl River observes, it has "not articulated what it perceives will happen to it that is harmful if it is not given immediate access to the sales and other financial records it seeks."[46]

Café Indigo appears to suggest that, absent the information it seeks through the audit provision about Pearl River's products, it would not be able to fully arbitrate its or Pearl River's trade-secret-related claims.[47]  It has not elaborated on that argument, however, and has not explained exactly what information it requires to address those claims in arbitration or how lack of that information would prejudice it in that arbitration.  Nor has it asserted that it <u>will</u> <u>not</u> be able to obtain this information through other means, such as arbitration-related discovery.  Instead, Café Indigo vaguely asserts that it <u>may</u> not be able to obtain the information by other means.  But Café Indigo seeks information about the process of manufacture and sales of products it accuses of infringing its trade secrets in a trade-secret-related arbitration.  The court is hard-pressed to believe that Café Indigo will not be able to obtain such information—information clearly relevant to Café Indigo's claim itself, as well as to Café Indigo's alleged damages—through the arbitration process.

---

[46] Defendant's Supp. Mem. at 5.

[47] In their arbitration proceeding, Pearl River seeks declaratory judgment that it has not misappropriated Café Indigo's trade secrets, and Café Indigo has counterclaimed asserting, among other things, that Pear River has done so.  <u>See</u> Mot. to Stay ¶ 2.

At oral argument, Café Indigo suggested, based on evidence it failed to submit in advance, that it "could not trust" Pearl River to produce accurate records through discovery in the arbitration. But, from the parties' representations at oral argument, Café Indigo's concerns appear nothing more than the usual sort of discovery disputes encountered routinely during litigation and arbitration, curable through appropriate depositions, interrogatories, and document requests. "Preliminary injunctions are strong medicine, and they should not issue merely to calm the imaginings of the movant." Matos ex rel. Matos v. Clinton Sch. Dist., 367 F.3d 68, 73 (1st Cir. 2004).

Of course, Pearl River expressly "acknowledge[d] and agree[d] that [Café Indigo] would suffer irreparable harm and that there would be no adequate remedy at law should [Pearl River] fail to comply with any of the terms and conditions of this Agreement," and that "in the event [Pearl River] fail[ed] to comply with any term or condition of this Agreement, [Café Indigo] shall be entitled to equitable relief," including a "temporary injunction . . . ."[48] But as Café Indigo acknowledged at oral argument, the court must make an independent, fact-based finding of irreparable harm. Though neither party saw fit to provide authority on this salient point, all Courts of Appeals that have addressed the issue have required such a finding, concluding that "the terms of a contract alone cannot require a court to grant equitable relief." Barranco v. 3D Sys. Corp., 952 F.3d 1122, 1130 (9th Cir. 2020) (collecting cases); Smith, Bucklin & Assocs., Inc. v. Sonntag, 83 F.3d 476, 481 (D.C. Cir. 1996) ("Although there is a contractual provision that states that

---

[48] 2017 License Agreement Art. XII.

the company has suffered irreparable harm if the employee breaches the covenant and that the employee agrees to be preliminarily enjoined, this by itself is an insufficient prop."). Cf. JL Powell Clothing LLC v. Powell, 590 F. App'x 3, 5 (1st Cir. 2014) (unpublished) (directing the district court to "review the matter of irreparable injury promptly, and vacate the preliminary injunction if it finds irreparable harm to be lacking" when the court relied on agreement term to establish irreparable harm).

Café Indigo has not demonstrated that it will suffer irreparable harm if it is not permitted to audit Pearl River's books and records according to the Agreement. And the parties' acknowledgment of irreparable harm for any breach, alone, is not enough to carry Café Indigo's burden on this point. Absent a demonstration of irreparable harm, Café Indigo is not entitled to a preliminary injunction.

### 3.    Balance of the equities and the public interest

The court addresses the last two factors for sake of completeness. To obtain its injunction, Café Indigo must demonstrate that "the balance of relevant hardships as between the parties" falls in its favor and that "the public interest" favors it. Waldron, 570 F.3d at 9.

Café Indigo argues that the equities weigh in its favor because it "seeks nothing more than to enforce standard terms of a commercial contract negotiated at arms-length [sic]," and because Pearl River would not be harmed by supplying it the information it seeks.[49] It advances the same arguments in favor of the public interest, pointing out that

---

[49] Plaintiff's Supp. Mem. at 7–8.

"[t]he public has a legitimate interest in ensuring that legally enforceable contracts are enforced."[50]

Pearl River, on the other hand, contends that it would be harmed were it required to provide more information than the audit provision strictly requires and that the public interest favors "the protection of confidential information . . . ."[51]  And Pearl River effectively conceded at oral argument that, though an audit would be more of an imposition on it than simple discovery, it would not be <u>harmed</u> if it is required to produce accounts and records relating only to the Licensed Products, as it agreed to do.

The equities and the public interest here are more or less equally balanced.  Café Indigo is right to invoke the contract enforcement.  And Pearl River is not wrong that these interests favor enforcement of the contract as written.  Thus, neither of these elements tip the balance far enough in favor of an injunction to overcome the lack of a demonstrable risk of irreparable harm.

### C.    Plaintiff's motion to stay or dismiss its claims

Café Indigo "concedes that Counts [1, 3, and 4] are arbitrable."[52]  And Café Indigo has indicated—and at the videoconference hearing held August 7, 2020, its counsel confirmed—that, "[f]ollowing the resolution of the motion for preliminary equitable

---

[50] Id. at 8 (quoting HCC Specialty Underwriters, Inc. v. Woodbury, 289 F. Supp. 3d 303, 320 (D.N.H. 2018) (McCafferty, J.)).

[51] Defendant's Supp. Mem. at 7–8.

[52] Mot. to Stay ¶ 3.

relief regarding the audit claim, and compliance with any order issued pursuant thereto, Café Indigo will seek a stay of that claim or in the alternative dismissal without prejudice."[53]

The Federal Arbitration Act requires, at the very least, a stay under these circumstances.  Specifically, it provides that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.  The parties here have instituted arbitration "under an agreement in writing for such arbitration."  Id.  The court is satisfied here, as the parties have agreed, that the issues involved in Café Indigo's breach-of-contract claims—both the interpretation of the Agreement and Café Indigo's claims of breach—are subject to arbitration under §§ 13.5.2–13.5.4 of the Agreement.  And Café Indigo has applied for a stay.  Under these circumstances, "the mandatory term 'shall'" in this provision "creates an obligation impervious to judicial discretion" that the court stay the proceedings.  Katz v. Cellco P'ship, 794 F.3d 341, 345 (2d Cir. 2015) (quoting Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26, 35 (1998)).  The parties may then "return to court, inter alia, to resolve disputes regarding the appointment of an arbitrator or to fill an

---

[53] Id. ¶ 7.

arbitrator vacancy, 9 U.S.C. § 5; to compel attendance of witnesses or to punish witnesses for contempt, id. § 7; and to confirm, vacate, or modify an arbitral award, id. §§ 9–11." Id. at 346 n.7.

The First Circuit Court of Appeals has held that under circumstances such as this, "where one side is entitled to arbitration of a claim brought in court, . . . a district court can, in its discretion, choose to dismiss the law suit, if all claims asserted in the case are found arbitrable." Next Step Med. Co. v. Johnson & Johnson Int'l, 619 F.3d 67, 71 (1st Cir. 2010). See also Rivera-Colón v. AT&T Mobility Puerto Rico, Inc., 913 F.3d 200, 206 n.5 (1st Cir. 2019) (affirming dismissal where all claims were arbitrable). When such claims are "dismissed 'with prejudice' in light of the arbitration requirement," the term "with prejudice" takes on a "peculiar use," and means "only that [the claims] could not be pursued as free-standing court claims but were remitted to arbitration—from which they could always end up back in court on a challenge to the arbitrator's ultimate disposition." Id. In that sense, the distinction between the ultimate outcome of a stay and dismissal of Café Indigo's claims—even with prejudice—is one without an apparent significant difference.

Café Indigo suggests that its claims be dismissed without prejudice "because there has been no adjudication of the merits of those claims."[54] By agreeing to subject its claims to arbitration in the Agreement, however, Café Indigo has foregone the right to have the court hear the merits of its breach-of-contract claims. But its claims "ha[ve] not

---

[54] Mot. to Stay ¶ 8.

been extinguished"; they have been "merely left to the arbitrator."  Next Step, 619 F.3d at 71.  See also Cortés-Ramos v. Sony Corp. of Am., 836 F.3d 128, 130 (1st Cir. 2016) (discussing effect of dismissing arbitrable claims "with prejudice").  The court therefore dismisses Café Indigo's claims with prejudice, in the sense described by the Court of Appeals in Next Step.

Despite Café Indigo's agreement, however, the court does not find its first count— a claim for "equitable discovery"—subject to the Agreement's arbitration clause. Through that claim, Café Indigo sought pre-suit discovery to uncover information underlying a potential claim for trade secret misappropriation.[55]  The parties have already conducted preliminary discovery.  This discovery included Pearl River's production of its recipes and processes for the ten Abe's Muffins products identified in Café Indigo's complaint and a Federal Rule of Civil Procedure 30(b)(6) deposition concerning those recipes and processes.[56]  To the extent that a trade-secret-misappropriation claim was viable, Café Indigo should have obtained the necessary basis for pleading such a claim through that discovery.  And, in fact, Café Indigo appears to have used it to initiate a trade-secret-misappropriation claim in arbitration.[57]  The court is disinclined to use its inherent equitable powers to grant further "equitable discovery."  Accordingly, it dismisses Count 1 with prejudice in the traditional sense.

---

[55] Am. Compl. ¶¶ 52–64.

[56] Joint Stipulation Regarding Discovery ¶¶ 3, 5.

[57] See Mot. to Stay ¶ 2.

**IV.**     **Conclusion**

The arbitration provisions of the parties' 2017 Agreement do not prevent the court

from hearing Café Indigo's request for a preliminary injunction.  But Café Indigo is not

entitled to that injunction because it has not demonstrated a risk of irreparable harm.  The

court therefore DENIES Café Indigo's motion for a preliminary injunction requiring

compliance with the audit provision of the 2017 Agreement.[58]  Having resolved Café

Indigo's preliminary injunction request, the court GRANTS its motion to stay or dismiss

Counts 1, 3 and 4 of the Amended Complaint,[59] albeit doing so with prejudice as outlined

above.  Because Café Indigo concedes arbitrability of the merits of Count 2, the court

dismisses that claim as well, also with prejudice as outlined above.  And in light of these

rulings, Café Indigo's motion for expedited discovery[60] is DENIED and Pearl River's

motion to dismiss the complaint[61] is DENIED as moot.

The clerk of court shall enter judgment accordingly and close the case.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  August 25, 2020

---

[58] Doc. no. 3.

[59] Doc. no. 41.

[60] Doc. no. 4.

[61] Doc. no. 18.

cc:    Edward J. Sackman, Esq.
       Lauren Pritchard, Esq.
       Arnold Rosenblatt, Esq.
       Kathleen M. Mahan, Esq.
       Max Moskowitz, Esq.